# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JESSE WEBB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 CV 10281 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| SALVADOR GODINEZ, in his individual ) | |
| and official capacities; JOHN BALDWIN, ) | |
| in his official capacity; ADAM ) | |
| MONREAL, in his individual and official ) | |
| capacities; CRAIG FINDLEY, in his ) | |
| official capacity; WILLIAM BECKETT, ) | |
| in his individual capacity; and DAVID ) | |
| BLACKBURN, in his individual capacity,[1] ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jesse Webb filed an amended complaint against defendants alleging that his due process and Eighth Amendment rights were violated, in violation of 42 U.S.C. § 1983 ("Section 1983), when he was not appointed counsel for his parole[2] revocation hearing, and was ultimately detained rather than released. Defendants have moved to dismiss the amended complaint in its entirety under Rule 12(b)(6). For the reasons described below, defendants' motion is granted.

## BACKGROUND[3]

Plaintiff's amended complaint alleges three violations of Section 1983, all stemming from plaintiff's parole revocation hearing: failure to appoint counsel for the hearing (Count I); incarceration beyond when plaintiff was entitled to be released (Count II); and denial of due

---
[1] Plaintiff's complaint also named several Jane and John Doe defendants. Plaintiff voluntarily dismissed those defendants in his response to defendants' motion to dismiss.
[2] Parole is also referred to as Mandatory Supervised Release. For simplicity's sake, the court will refer to Mandatory Supervised Release as parole.
[3] The following facts are taken from plaintiff's amended complaint and are assumed to be true for the purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

process during the revocation process (Count III). Plaintiff seeks compensatory and punitive damages in relation to Counts I through III. Plaintiff also seeks a declaratory judgment that, "if indigent, he be assigned counsel in any future parole revocation hearing where he challenges the asserted bases for parole revocation" (Count IV). According to plaintiff, he was not advised of his right to an attorney and no inquiry was made as to his need for an attorney prior to his parole revocation hearing. Plaintiff alleges that his parole was revoked as a result of his inability to assert a proper defense during that hearing. Plaintiff ultimately blames the policies of the Illinois Department of Corrections ("DOC") and the Illinois Prisoner Review Board ("PRB") for his predicament, which is suffered by many registered sex offenders, and has been coined "Violating at the Door" or the "Turnaround Practice."

Plaintiff was arrested for possession of a controlled substance and taken to Cook County Jail on December 23, 2013. Unable to pay his bond, plaintiff remained there leading up to his trial and until he was convicted on October 8, 2014. Plaintiff was sentenced to one year of incarceration and was given credit for the 290 days he had served in Cook County. Plaintiff was also eligible for one day of credit for each day served, and he expected to be released on parole shortly after being transferred to Stateville Correctional Center ("Stateville"). Plaintiff's expectation was correct: he was paroled upon arrival at Stateville on October 10, 2014. Rather than being released, however, plaintiff was given a "Parole Violation Report" on October 15, 2014.[4] The report informed plaintiff that he had violated his parole the very day that it was granted because he lacked suitable housing, that is, housing that meets the many requirements

---

[4] The PRB makes the determination whether an inmate should be released. Once that determination is made, the PRB sends the inmate a release order. After that, the DOC is responsible for monitoring the inmate's release and compliance with any conditions set by PRB or Illinois Statute, such as the need for suitable housing. Failure to comply with those conditions can result in the parolee being returned to prison for the remainder of his parole term. See Murdock v. Walker, 2014 WL 916992, *2 (N.D. Ill. Mar. 10, 2014).

2

that sex offenders must fulfill.[5] This, plaintiff alleges, was the result of a joint internal policy of the DOC and the PRB, the Turnaround Practice,[6] which is aimed at ensuring that inmates (often indigent sex offenders) who have earned the right to be released instead spend their term of parole incarcerated.

Plaintiff further alleges that he had secured suitable housing and immediately contested the violation report, but could not effectively convey this information at his parole revocation hearing because he was not appointed counsel and has limited formal education. According to plaintiff he was not appointed counsel due to another joint policy of the DOC and the PRB that denied counsel to indigent parolees facing revocation, but permitted retained counsel to appear at revocation hearings on behalf of more affluent parolees. Plaintiff's parole was ultimately revoked and he spent an additional year (his parole term) at Stateville without having spent one day released on parole. Plaintiff holds defendants accountable for his additional year of incarceration. Godinez is the former Director of the DOC and Baldwin currently fills that role. Adam Monreal is the former Chairman, and Findley the current Chairman, of the PRB. Beckett and Blackburn are parole agents for the DOC.

## DISCUSSION

### I. Legal Standard

A motion brought under Rule 12(b)(6) challenges the sufficiency of the complaint. Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). Though short and plain, the pleading

---

[5] Plaintiff was convicted of sexual assault in 1998.
[6] This became known as the Turnaround Practice because inmates who were due to be released were walked to the front gate of the prison, as if to be released, but were instead given a notice informing them that they had violated the housing requirement of their release, and were then turned around and walked back into the prison.

3

must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Id.

This standard demands that a complaint contain sufficient factual matter to state a claim that is plausible on its face and allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When ruling on a Rule 12(b)(6) motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004).

## II.  Analysis

Defendants argue that plaintiff's claims should be dismissed for the following reasons: (1) defendants are immune from official capacity claims under the Eleventh Amendment; (2) defendants are entitled to absolute immunity with regard to the individual capacity claims; (3) if defendants are not immune, plaintiff's allegation that defendants refused to appoint counsel for plaintiff's parole revocation hearing fails to state a plausible constitutional violation; and (4) defendants are entitled to qualified immunity.[7] Defendants present an additional argument in their reply brief: that plaintiff's request for declaratory judgment was mooted by a settlement reached on January 13, 2017 in Morales v. Findley, 13-CV-7572 (N.D. Ill. Oct. 22, 2013), and,

---

[7] For the reasons discussed below, the court need not reach the third and fourth issues.

because plaintiff lacks a request for prospective relief, defendants are immune from official capacity claims under the Eleventh Amendment. The court will address this last argument first.

Morales was a class action lawsuit brought under F. R. Civ. P. 23(b)(2). The court certified the following class: "all people who, while on parole/Mandatory Supervised Release ('MSR'), are supervised by the IDOC and who now or in the future will be subject to parole revocation proceedings conducted by the IDOC and the PRB." Order at 2, Morales, No. 13-CV-7572, Doc. 136. The claims in Morales were nearly identical to those in the instant case: that the DOC and the PRB systematically failed to screen parolees facing revocation to determine whether they were eligible to receive appointed counsel, and failed to appoint counsel to those who qualified. Morales also challenged the process through which parole revocation hearings were held on due process grounds. Id. The parties in Morales settled after engaging in extensive discovery and agreed to the implementation of a number of measures to safeguard the due process rights of parolees facing revocation procedures. Relevant to the instant case, the court approved the following injunctive relief:

> If a parolee cannot afford to hire an attorney, and has a timely and colorable claim that he or she did not commit the alleged parole violation, PRB shall appoint counsel, upon request and at no expense to the parolee, throughout the entire parole revocation process.

Id. at 3.

The injunctive relief in Morales applied to the entire class. Because the class was certified under Rule 23(b)(2), members cannot opt-out. Id. The court noted, however, that class members are free to bring individual claims for damages and other alleged deficiencies with the parole revocation and supervision process.[8] Id. at 4.

---

[8] One anticipated claim was "the continued incarceration of individuals who cannot secure an approved host site." Id. at 4. Notably, in the instant case plaintiff does not claim that he was unable to secure an approved host site, but

5

Defendants argue that, because the certified class in Morales includes plaintiff and the settlement agreement grants plaintiff the relief he seeks in Count IV, plaintiff's request for prospective relief cannot serve to circumvent Eleventh Amendment immunity, and the official capacity claims against defendants must be dismissed. Plaintiff argues in his surreply in opposition to defendants' motion to dismiss that the Morales class does not include plaintiff for two reasons: (1) it does not encompass "Turnaround Practice" parole revocation proceedings; and (2) the settlement agreement does not preclude plaintiff from seeking injunctive relief to address constitutional deficiencies in the parole revocation process not covered by the settlement agreement. According to plaintiff, his equal protection claim (Count I) is one such deficiency. The court will address these arguments in turn.

Plaintiff argues that the Morales settlement agreement does not apply to "Turnaround Practice" revocation proceedings because the protected class is defined in the settlement agreement as any individual who "has been released from an IDOC facility on parole or Mandatory Supervised Release (MSR) status." It follows, according to plaintiff that individuals who have not been physically released will not be covered by the safeguards outlined in the settlement agreement. Plaintiff is mistaken. According to the settlement agreement, the Morales class is "comprised of all people who . . . now or in the future will be subject to parole revocation proceedings conducted by the IDOC and the Illinois Parole Revocation Board (hereinafter "PRB")." Final Settlement Agreement at 1, Morales, No. 13-CV-7572, Doc. 133-1. This includes people who have not been physically released, such as plaintiff.

As explained above, the PRB issues a release order once it determines that an inmate should be released and the DOC works with the inmate after that to monitor his release and

---

rather that he had secured an approved host site and was unable to communicate this during his revocation hearing because of the due process deficiencies outlined above.

compliance with conditions of release. Importantly, the inmate is classified as a parolee once the PRB decides he should be released, even though he remains in prison until his release date. Murdock, 2014 WL 916992, *2. Accordingly, the Morales class includes plaintiff, if he is indigent and subject to parole revocation hearings in the future. This is so regardless of whether he is physically released prior to being notified of a probation violation report.

Plaintiff's second argument is equally unavailing. As a preliminary matter, it is not clear to the court that Count I, titled "Indigent Person's Right to Appointed Counsel in Revocation Proceedings" is in fact an Equal Protection claim. Even assuming that it is an Equal Protection claim, it is resolved by the Morales settlement agreement, which mirrors the injunctive relief that plaintiff requests in Count VI. Plaintiff's argument that the settlement agreement does not preclude him from seeking injunctive relief to address constitutional deficiencies in the parole revocation process *not covered by the settlement agreement* ignores this important detail. Indeed, plaintiff does not, and likely cannot, propose any further injunctive relief (not requested in his complaint) that would remedy an Equal Protection claim, but is not encompassed by the Morales settlement agreement.

The injunctive relief granted in Morales renders moot plaintiff's request for injunctive relief, and his official capacity claims must be dismissed because he cannot circumvent the Eleventh Amendment. See Scott v. O'Grady, 975 F.2d 366, 369 (7th Cir. 1992) (suits against state officials in their official capacity are deemed to be suits against the state and are barred by the Eleventh Amendment); Ameritech Corp. v. McCann, 297 F.3d 582, 586 (7th Cir. 2002) ("state officials may be sued in their official capacities for injunctive relief") (internal quotation omitted). Defendants concede, however, that Morales does not preclude plaintiff's individual

capacity claims for damages. Instead, they argue that all of the defendants enjoy absolute immunity. The court agrees, to an extent.

PRB members and DOC officials have absolute immunity with respect to "activities that are 'inexorably connected with the execution of parole revocation procedures and are analogous to judicial action.'" Willis v. Prisoner Review Bd., 2014 WL 2467708, at *2 (N.D. Ill. June 6, 2013) (quoting Walrath v. United States, 35 F.3d 277, 282 (7th Cir. 1994)); see also Thompson v. Duke, 882 F.2d 1180, 1183, n.3 (7th Cir. 1989) ("We . . . do not think that a significant distinction exists between the duties performed by those defendants who are members of the Department of Corrections and those defendants who are members of the Prison Review Board."); Wilson v. Kelkhoff, 86 F.3d 1438, 1444 (7th Cir. 1996) ("We have also held that prison officials who are not prisoner review board members are entitled to absolute immunity under circumstances where they perform acts with prosecutorial or judicial analogs.") (citing Walrath, 35 F.3d at 282). "The Seventh Circuit has repeatedly held that parole board members are absolutely immune from suit for their decision to grant, deny, or revoke parole." The Seventh Circuit has extended that immunity "not only for decisions to deny, grant, or revoke parole, 'but also to those activities that are part and parcel of the decision process.'" Willis, 204 WL 2467708, at *2 (quoting Thompson, 883 F.2d at 1184). "The decision to revoke [plaintiff's] supervised release, albeit on grounds that [plaintiff] argues were not valid, is a prototypical quasi-judicial act deserving of absolute immunity." Wilson, 86 F.3d at 1445.

In the instant case plaintiff's parole was revoked for lack of suitable housing, a basis which plaintiff claims was factually invalid. The decision to revoke plaintiff's parole was clearly quasi-judicial in nature and therefore easily falls under the umbrella of absolute immunity. Plaintiff further claims, however, that he was denied assistance of counsel due to a joint policy of

8

the DOC, and the PRB that denied counsel to indigent parolees facing revocation. Plaintiff alleges that the decision to deny him counsel had nothing to do with the "decision process" implemented to revoke his parole and is not protected by absolute immunity. Although the court agrees, plaintiff's claim still fails.

As for the DOC defendants, they correctly point out that, as DOC employees, they are not responsible for overseeing the parole process, including revocation hearings. See Murdock v. Walker, 2014 WL 916992, *9 (N.D. Ill. Mar. 10, 2014) ("Illinois law instills the PRB with the power to conduct a [ ] revocation hearing, not the IDOC") (citing 730 ILCS 5/3-3-9e)). To the extent that DOC employees are involved in parole revocation hearings, they "assist eligible prisoners" and "report their findings to the PRB so that the PRB may consider the information in its release decisions." Brown v. Randle, 2014 WL 2533213, *5 (N.D. Ill. June 5, 2014) (citation omitted). DOC employees do not have authority to revoke parole; that authority lies with the PRB. Id. Accordingly, DOC employees are not liable for the procedures implemented during a parole revocation hearing, including the decision whether to appoint counsel. See Murdoch, 2014 WL 916992 at *8—9 (finding that DOC employees cannot be held liable for alleged constitutional violations during parole revocation hearings). Accordingly, defendants' motion is granted as to the DOC defendants in their individual capacities.

As for the PRB defendants, Monreal and Findley, to state a Section 1983 claim against them in their individual capacities, plaintiff must allege personal involvement by each of them in the deprivation of plaintiff's constitutional rights. See Simpson v. Meijer, 2013 WL 3834641, *4 (N.D. Ill. July 24, 2013) ("§ 1983 does not provide for vicarious or supervisory liability") (citing Monell v. Dept. of Soc. Serv., 436 U.S. 658, 691 (1978). General allegations that a defendant "was responsible for a policy or procedure that led to [plaintiff's] injury" are insufficient to

allege personal involvement.  Id.  Additionally, plaintiff must allege personal involvement through "factual allegations, not mere conclusory labels."  Id.  Plaintiff's complaint fails to do so.

Plaintiff does not allege that either Monreal or Findley was personally involved in the decision to deny plaintiff counsel during his revocation hearing in any way, or was even aware of it.  Instead, plaintiff attacks an alleged *policy*, implemented in part by Monreal, to deny all indigent parolees counsel during revocation hearings.  Unfortunately for plaintiff, allegations that his constitutional rights were violated as the result of a PRB policy are allegations against the defendants in their official capacities, not their individual capacities.  Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008) (citing Monell, 436 U.S. at 694).  As explained above, plaintiff's official capacity claims are prohibited by the Eleventh Amendment, and the court must dismiss them.

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion (Doc. 47) in its entirety and dismisses the case without prejudice with leave to file a second amended complaint.[9]

**ENTER:** **June 20, 2017**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[9] The court thanks attorney John Bowley, who was assigned the case pursuant to his obligations as a member of the court's trial bar, for the considerable amount of time and effort he dedicated to plaintiff's responsive pleadings, and commends him for his ardent advocacy on plaintiff's behalf.